UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
PEDRO MARTINEZ SALAZAR,          :
                                               :          **REPORT AND**
                       Plaintiff,    :          **RECOMMENDATION**
                                               :
       -against-                :          19-CV-5861 (ENV) (PK)
                                             :
M GOURMET DELI GRILL CORP.  and  :
ABDULLAH GUBRAN,          :
                                             :
                     Defendants.   x
-----------------------------------------------------------

**Peggy Kuo, United States Magistrate Judge:**

Pedro Martinez Salazar ("Plaintiff") brought this action against M Gourmet Deli Grill Corp. ("M Gourmet") and Abdullah Gubran ("Gubran," and collectively, "Defendants") for violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). (*See* Compl., Dkt. 1.)  Plaintiff moved for default judgment against Defendants and for leave to file a request for attorneys' fees. (the "Motion," Dkt. 12.)

The Honorable Eric N. Vitaliano referred the Motion to the undersigned for a report and recommendation.  For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **Factual Background**

The following facts are taken from Plaintiff's Complaint and Declaration in support of the Motion (the "Salazar Decl.," Dkt. 12-11.)

M Gourmet had gross annual sales at or over $500,000 in 2017 and 2018 and employed multiple employees, including Plaintiff, who handled goods or materials that moved in interstate commerce. (Compl. ¶ 47-48.)    For the time period covered by the Complaint, Gubran owned, operated, or controlled M Gourmet. (Compl. ¶ 10-14.)

1

Defendants employed Plaintiff as a cook at Maimoni Gourmet Deli & Grill beginning on or about December 4, 2017 through June 16, 2019.  (Compl. ¶¶ 5, 18-19.)  Gubran participated in the hiring, supervision, and management of Plaintiff, including setting his hours and determining his method and amount of payment.  (Compl. ¶¶ 31-42.)

Defendants did not require that Plaintiff sign in or out of his shifts or track his time in any manner.  (Compl. ¶ 20.)  Defendants did not maintain time records for Plaintiff's work hours.  (Compl. ¶ 21.)

Plaintiff regularly worked six days a week, from Monday through Saturday, for roughly 12 hours each day.  (Compl. ¶ 22.)  Plaintiff worked two Sundays a month, also for twelve hours a day.  (*Id.*)  Plaintiff therefore worked 72 hours per week when he worked six days, and 84 hours per week when he worked seven days.  (Compl. ¶ 24.)

Defendants paid Plaintiff a flat weekly amount for his Monday through Saturday work.  (Compl. ¶ 25.)  Defendants paid Plaintiff an hourly rate on Sundays.  (*Id.*)  Defendants never paid an overtime rate when Plaintiff worked more than 40 hours a week.  (Compl. ¶¶ 26-27.)  Defendants never paid spread of hours compensation for days on which Plaintiff worked shifts lasting more than ten hours.  (Compl. ¶ 28.)  Defendants never provided Plaintiff with any wage notices upon hiring or afterwards, or any wage statements along with his weekly earnings.  (Compl. ¶ 29-30.)

Defendants paid Plaintiff a weekly wage for the work he performed Monday through Saturday.  These wages increased over time, as follows:

| Year | Period | Weekly Rate |
|------|--------|-------------|
| **2017** | Dec. 4, 2017 – Dec. 30, 2017 | $700.00 |
| **2018** | Dec. 31, 2017 – Jan. 27, 2018 | $750.00 |
|  | Jan. 28, 2018 – Feb 17, 2018 | $800.00 |
|  | Feb. 18, 2018 – Mar. 3, 2018 | $850.00 |

|  | Mar. 4, 2018 – Dec. 29, 2018 | $900.00 |
| 2019 | Dec. 30, 2018 – June 15, 2019 | $900.00 |

("Salazar Decl.," Exhibit H to the Motion, Dkt. 12-11, ¶¶ 13-17.)

Defendants paid Plaintiff an hourly wage for his Sunday work, and that rate also increased over time.  Defendants calculated Plaintiff's Sunday wage by dividing his weekly rate by the number of regular Monday through Saturday hours worked, then rounded that figure:

| Year | Period | Sunday Hourly Rate |
| --- | --- | --- |
| 2017 | Dec. 4, 2017 – Dec. 30, 2017 | $9.75 |
| 2018 | Dec. 31, 2017 – Jan. 27, 2018 | $10.50 |
|  | Jan. 28, 2018 – Feb 17, 2018 | $11.00 |
|  | Feb. 18, 2018 – Mar. 3, 2018 | $12.00 |
|  | Mar. 4, 2018 – Dec. 29, 2018 | $12.50 |
| 2019 | Dec. 30, 2018 – June 15, 2019 | $12.50 |

(*Id.* ¶¶ 18-23).

Defendants paid Plaintiff in cash each week.  (*Id.* ¶ 24.)

**II.    Procedural Background**

Plaintiff filed the Complaint on October 16, 2019.   Plaintiff served a Summons and copy of the Complaint on Gubran by leaving a copy with a coworker at Gubran's place of business and mailing a copy to the same address.  (Dkt. 5., Dkt. 12-6.)   Plaintiff served a Summons and copy of the Complaint on M Gourmet via the New York Secretary of State consistent with N.Y. Bus. Corp. Law § 306(b).  (Dkt. 6, Dkt. 12-5.)   After neither defendant answered nor otherwise responded to the Complaint, Plaintiff requested a certificate of default on January 2, 2020 (Dkt. 8), and the Clerk entered

default against Defendants on January 7, 2020.  (Dkt. 10.)  Plaintiff moved for default judgment on February 3, 2020.

## DISCUSSION

### I.     Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

To establish entitlement to default judgment, the plaintiff must demonstrate proper service of the summons and complaint.  *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-cv-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).

"Before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations and alterations omitted).

The plaintiff must establish compliance with the procedural requirements of Local Civ. R. 55.2(c).

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The court must determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Id.*  However, a default is "not considered an admission of damages."

*Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-cv-06476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). On default, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established and the amount of money potentially involved." *Klideris v. Trattoria El Greco*, No. 10-cv-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.   Jurisdiction

### A.   Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B.   Service on the Defendants

Plaintiff properly served M Gourmet by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 6, Dkt. 12-5.) Plaintiff served Gubran by delivering a copy of the Summons and Complaint to a person of suitable age at Gubran's actual place of business and then mailing a copy to his business. N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e). (Dkt. 5, Dkt. 12-6.) Service on both defendants was therefore proper.

### C.   Personal Jurisdiction

New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 619 n.1 (2d Cir. 2016). The State has specific jurisdiction over individuals who "'transact

any business within the state' so long as 'the cause of action arises from the transaction.'" *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012)).  It also has general jurisdiction over corporations formed under its laws and operating within the state.  *See Francis*, 2018 WL 4292171 at *3.  Plaintiff alleged that M Gourmet is a New York corporation, and that Gubran is a resident of New York State. (Compl. ¶¶ 6, 9.)  Plaintiff further alleged that Gubran conducted business in New York State, and that the allegations in the Complaint arise out of those transactions.  (*See generally* Compl.)  The Court therefore has personal jurisdiction over the Defendants.

## III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiffs filed the following documents in support of the Motion: Notice of Motion (Dkt. 12); Memorandum of Law in Support of Plaintiffs' Motion (Dkt. 12-1), declarations and affidavits in support (Dkt. 12-2, 12-11); the Clerk's Certificate of Default (Dkt. 12-9); the Complaint (Dkt. 12-4); a proposed order (Dkt. 12-12); proof of service of the Complaint (Dkt. 12-5, 12-6); and proof of mailing of the Motion to the defaulting parties (Dkt. 12-3.)  These documents comply with the requirements of Local Civil Rules 7.1 and 55.2.

## IV.    Statute of Limitations

The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Under the NYLL, the statute of limitations is six years.  *See* NYLL §§ 198(3), 663(3).

Plaintiff commenced this action on October 16, 2019.  (*See* Compl.)  He alleged violations beginning with his employment on December 4, 2017.  (Compl. ¶ 5.)  His claims were brought within two years, and therefore are entirely within the periods covered by both the FLSA and NYLL.

## V.   Liability under the FLSA and NYLL

### A.   Liability under the FLSA

Plaintiff claims that Defendants are liable for unpaid overtime wages under the FLSA. (Compl. ¶¶ 44-56.)  The FLSA requires covered employers to pay covered employees who work over 40 hours a week overtime "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  To establish his entitlement to default judgment, Plaintiff must establish (1) that Defendants were employers subject to the FLSA; (2) that Plaintiff was an employee engaged in commerce or for an enterprise engaged in commerce; (3) that no exemption applies; and (4) that Plaintiff worked more than 40 hours per week and was not compensated at the statutory rate. *See* 29 U.S.C. § 207(a)(1); 29 U.S.C. § 213; *see also Rowe v. CC Rest. & Bakery, Inc.*, No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

### 1.   *Defendants employed Plaintiff*

The FLSA defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance."  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (quotation in original).  "The Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104 (internal quotations omitted).  Under an "economic realities" test established by the Court of Appeals, an employment relationship exists if the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *See id.* at 104-05 (*quoting Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).

Plaintiff established an employment relationship with both Defendants under the FLSA. Plaintiff pled that he worked as a cook for M Gourmet and prepared and cooked food items for its customers. (Compl. ¶ 18-19; Salazar Decl. ¶ 7.) M Gourmet controlled his working conditions. (Compl. ¶ 15.) Plaintiff further alleges that Gubran hired him, supervised him, set his schedule, decided his hours, determined how and how much he was paid, and his job duties. (Compl. ¶¶ 31-38; *see also* Salazar Decl. ¶¶ 29-37.) These allegations satisfy the economic realities test and establish that Defendants were employers under the FLSA. *See Fermin v. Las Delicias Peruanas Rest.*, Inc., 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) (Plaintiff need not allege all four economic realities factors to establish that defendant is an employer).

### 2.   Plaintiff was an employee engaged in commerce or employed by an enterprise engaged in commerce

The FLSA broadly defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). For the same reasons that Defendants were "employers," Plaintiff was their employee. *See Fermin*, 93 F. Supp. 3d at 32.

The FLSA's overtime protections only extend to "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). These requirements are referred to as the "individual coverage" and "enterprise coverage" tests. *See Rowe*, 2019 WL 4395158, at *4.

"The individual coverage test considers the employment actions of plaintiff to determine whether the employees themselves are engaged in commerce." *Id.* at *4 (internal quotations omitted). The statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Local activities meet this standard if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty*

*Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

> The enterprise coverage test applies if the employee's employer
>
> has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Rowe*, 2019 WL 4395158, at *4.

Plaintiff alleged that he was a cook for Defendants. (Compl. ¶ 5; Salazar Decl. ¶ 6.) According to the Complaint, Plaintiff "handled food and supplies that have moved in interstate commerce" and "[u]pon information and belief, the gross annual volume of sales made or business done by Defendant [M] Gourmet Deli for the years 2018 and 2017 was not less than $500,000.00." (Compl. ¶¶ 47-48.) While these allegations come close to simply restating the applicable statutory definitions, courts in this district have held that similar allegations for restaurant workers satisfy this element of the FLSA. *See, e.g., Fermin*, 93 F. Supp. 3d at 33 ("…it is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State."); *see also Huerta v. Victoria Bakery*, No. 10-cv-4754 (RJD)(JO), 2012 WL 1107655 (E.D.N.Y. Mar. 30, 2012); *compare Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012) (security guards not necessarily engaged in commerce sufficient to establish FLSA claim). Given these cases, the undersigned finds that Plaintiff has established that Defendants were engaged in commerce or in the production of goods for commerce, and therefore he satisfies both the individual and enterprise coverage tests.

### 3.   No FLSA exemption applies

"[T]he FLSA contains a litany of exemptions." *Fermin*, 93 F. Supp. 3d at 32 (internal quotations omitted); *see* 29 U.S.C. § 213. These include "bona fide executive, administrative, or

professional" employees, "outside salesmen," certain seasonal employees, some employees in fishing, agriculture, and small local newspaper employees, among many others. *See id.* None of these exemptions apply to Plaintiff, who worked as a cook, and therefore no FLSA exemption applies. Because he satisfies the definition of employee, the individual and enterprise coverage tests, and because no exemption applies, the undersigned finds that Plaintiff is an employee covered by the FLSA.

### 4.   *Plaintiff worked more than 40 hours per week and was not paid overtime*

"The FLSA mandates that an employee engaged in interstate commerce be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir.2013). In the context of a motion for default judgment, plaintiffs must provide "concrete allegations regarding the overtime that they worked." *Fermin*, 93 F. Supp. 3d at 44.

Here, Plaintiff provided concrete allegations that he worked 72- and 84-hour workweeks and was therefore entitled to overtime pay under the FLSA. (Compl. ¶¶ 22, 24; Salazar Decl. ¶¶ 10-11.) Plaintiff has established his entitlement to overtime pay. Plaintiff also alleged that he was not paid at an overtime rate of one-and-a-half his regular rate of pay. (Compl. ¶ 26; Salazar Decl. ¶ 25.) Plaintiff supported that contention by alleging that he was compensated at a flat weekly rate for his regular six-day workweek from Monday through Saturday and was compensated on a flat hourly basis on Sundays. (Compl. ¶¶ 22, 24-25.) The allegations are sufficiently concrete to establish that Plaintiff worked overtime and was not compensated according to law. The undersigned therefore recommends that the Court hold Defendants liable under the FLSA for failure to pay overtime.

### B.   Liability under the NYLL

Plaintiff also alleged violations of the NYLL, including claims for failure to pay overtime compensation, spread of hours compensation, and failure to provide wage notices and wage statements. (*See* Compl. ¶¶ 57-83)

For each of his NYLL claims Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. The NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on similar factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status); *but see Rodriguez v. Ridge Pizza Inc.*, No. 16-cv-00254 (DRH)(AKT), 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (NYLL definition is less stringent than "… the FLSA definition in that it 'does not require that a Defendant achieve a certain minimum in annual sales or business in order to be subject to the law.'") (*quoting Fermin*, 93 F. Supp at 34).

Because Plaintiff had an employer-employee relationship with Defendants under the FLSA, he also had an employer-employee relationship under the NYLL.

### 1. *Plaintiff has established Defendants' liability for overtime claims under the NYLL*

As under the FLSA, employers must pay overtime wages of one-and-a-half times "the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 146-1.4. "To state a claim for recovery of overtime wages under the NYLL, plaintiffs must sufficiently allege that they were not compensated for hours worked in excess of 40 in a given week, and that 'they were 'employees' and that Defendants were 'employers' as defined by the statute.' *Ridge Pizza Inc.*, 2018 WL 1335358 at *7 (*quoting Fermin*, 93 F. Supp. 3d at 34).

The undersigned accordingly recommends a finding that Plaintiff has sufficiently alleged facts necessary to establish Defendants' liability for failure to pay overtime wages under the NYLL.

### 2. *Plaintiff has established Defendants' liability for spread of hours claims under the NYLL*

All New York hospitality industry workers are entitled to spread of hours pay.  *See* 12 N.Y.C.R.R. § 146-1.6.  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  *Id.*  All restaurant and all-year hotel workers are "hospitality workers" entitled to spread-of-hours pay.  *Id.* § 146-1.6(d).  Plaintiff, a restaurant cook, alleged that he worked more than 10 hours a day every day that he worked and was not paid spread-of-hours compensation. The undersigned recommends that Defendants be held liable for failure to pay Plaintiff spread-of-hours pay under the NYLL.

### 3. *Plaintiff has established Defendants' liability for failure to provide wage notices and wage statements under the NYLL*

Plaintiff also alleged violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions.  (Compl. ¶¶ 76-83.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Here, Plaintiff alleged that he never received wage notices or statements from Defendants. (Compl. ¶¶ 29-30; Salazar Decl. ¶¶ 27-28.)  Plaintiff's allegations suffice under the wage notices and statements provisions of the NYLL, and therefore the undersigned recommends a finding that Defendants are liable for these claims as well.

C.       **Defendants' joint liability**

Plaintiff has alleged that Gubran controlled M Gourmet and exerted control over his employment, such that Gubran was also Plaintiff's employer.  Because Defendants "were jointly Plaintiff's employers, each defendant is jointly and severally liable under the FLSA and NYLL for any damages award made in Plaintiff's favor."  *Mahoney*, 2016 WL 6585810 at *9.

VI.    **Damages**

Plaintiff seeks (1) $109,739.08 for unpaid overtime compensation pursuant to the FLSA and the NYLL; (2) $6,435.00 for unpaid spread of hours compensation pursuant to the NYLL; (3) $116,174.08 in liquidated damages pursuant to the NYLL; (4) $5,000.00 for wage notice statutory damages pursuant to NYLL § 195(1); (5) $5,000.00 for wage statement statutory damages pursuant to NYLL § 195(3); (6) $14,680.90 in pre-judgment interest; (7) post-judgment interest pursuant to 28 U.S.C. § 1961; and (8) an automatic fifteen percent increase to any damage award pursuant to the NYLL in the event Defendants fail to meet the deadlines for payments on a judgment awarded by the Court.  (Dkt. 12-1 at 24.)

"An employee bringing an action for unpaid wages under the FLSA or the NYLL has the burden of proving that the defendant did not adequately compensate the employee."  *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG)(JMA), 2014 WL 4954629, at *3 (E.D.N.Y. Oct. 2, 2014).  Under both federal and state law, an employer must "make, keep, and preserve" records of its employees' wages and employment conditions.  29 U.S.C. § 211(c); *see* NYLL § 196–a(a).  "However, if an employer fails to keep or produce records, the plaintiff may satisfy [his or] her burden by producing sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference."  *Carrasco–Flores*, 2014 WL 4954629 at *3; *see also Avelar v. Ed Quiros, Inc.*, No. 13-cv-7017 (ADS)(AYS), 2015 WL 1247102, at *8 (E.D.N.Y. Mar. 18, 2015).

As an initial matter, Plaintiff calculated his overtime, spread-of-hours, and liquidated damages requests using an employment start date of December 3, 2017. (Salazar Decl. at 6.) However, Plaintiff alleged in the Complaint and stated in his declaration that he was employed from on or about December 4, 2017. (Compl. ¶ 5; Salazar Dec. ¶ 6.) As Plaintiff also alleged that his regular workweek was from Monday to Saturday, and December 4, 2017, was a Monday, the undersigned based damages calculations on a start date of December 4, 2017.

### 1. *Damages under the FLSA and NYLL overtime provisions*

Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the [Plaintiff's] salary by the number of hours which the salary is intended to compensate." *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (quoting 29 C.F.R. § 778.113 (2016)). While "there is a rebuttable presumption that a weekly salary covers 40 hours[,] the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Id.* (quotations omitted).

Unlike the FLSA, however, the overtime claims under the NYLL in this case are governed by the Hospitality Industry Wage Order ("Hospitality Order"), promulgated pursuant to the NYLL, which mandates that "when an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b). The Hospitality Order provides the only method for calculating the rate of pay for covered workers. *See id.*; *see also Shanfa Li v. Chinatown Take-Out Inc.*, 812 F. App'x 49, 52 (2d Cir. 2020). Even if Defendants had appeared in this action, where the employee is paid a flat rate, the Hospitality Order contains no mechanism for rebutting the calculation based on a maximum 40-hour work week with evidence that the employee had an agreement with the employer to work more than 40 hours a week.

14

As a restaurant worker, Plaintiff is covered by the Hospitality Order. *See* 12 N.Y.C.R.R. § 146-1.1 *and* 146-3.1. Plaintiff worked more than 40 hours per week, so his weekly wage must be divided by 40 to determine his hourly wage. Furthermore, the Hospitality Order prohibits an hourly rate below the minimum wage, *see* 12 N.Y.C.R.R § 146-1.1, mandates overtime pay, *id.* § 146-1.4, and specifies that employees may not be paid flat weekly rates, *id.* § 146-2.5. Plaintiff and Defendants were thus precluded from agreeing to an hourly rate for Plaintiff's work on Sundays, which not only failed to pay him an overtime rate, but also paid him below minimum wage for much of his employment. By Sunday every week, Plaintiff had already worked more than 40 hours, and thus his entire Sunday wage should have been compensated as overtime. For these reasons, Plaintiff's Sunday hourly rate must be determined by the Hospitality Law's standard and not the agreement of the parties.

Because the FLSA and NYLL prescribe different methods of calculating Plaintiff's regular rate, and therefore different overtime rates, the statutes result in different recoveries for the same uncompensated overtime hours. "In order to avoid a double recovery of damages, courts generally do not award damages under both federal and state law for the same hours worked." *Chowdhury v. Hamza Exp. Food Corp.*, No. 14-CV-150 (JBW), 2015 WL 5541767, at *5 n.7 (E.D.N.Y. Aug. 21, 2015), *R&R adopted*, 2015 WL 5559873 (E.D.N.Y. Sept. 18, 2015), *aff'd sub nom. Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59 (2d Cir. 2016). Plaintiff requests that damages be determined under the NYLL instead of the FLSA.

On weeks that Plaintiff worked six days, his regular rate was simply the total weekly wage divided by 40. On weeks that he worked seven days, his regular rate was his weekly wage plus his total Sunday wage divided by 40.

| Year | Work Period | Hours Worked Per Week | Overtime Hours Worked Each Week | Weekly Rate[1] | Regular Rate[2] | Overtime Rate[3] | Weekly Overtime Wage[4] | Weeks in Work Period | Unpaid Overtime in Work Period[5] |
|---|---|---|---|---|---|---|---|---|---|
| 2017 | Dec. 4, 2017 - Dec. 30, 2017 | 72.00 | 32.00 | $700.00 | $17.50 | $26.25 | $840.00 | 3.00 | $2,520.00 |
| | Dec. 4, 2017 - Dec. 30, 2017 | 84.00 | 44.00 | $817.00 | $20.43 | $30.64 | $1,348.05 | 1.00 | $1,348.05 |
| 2018 | Dec. 31, 2017 - Jan. 27, 2018 | 72.00 | 32.00 | $750.00 | $18.75 | $28.13 | $900.16 | 2.00 | $1,800.32 |
| | Dec. 31, 2017 - Jan. 27, 2018 | 84.00 | 44.00 | $876.00 | $21.90 | $32.85 | $1,445.40 | 2.00 | $2,890.80 |
| | Jan. 28, 2018 - Feb 17, 2018 | 72.00 | 32.00 | $800.00 | $20.00 | $30.00 | $960.00 | 2.00 | $1,920.00 |
| | Jan. 28, 2018 - Feb 17, 2018 | 84.00 | 44.00 | $932.00 | $23.30 | $34.95 | $1,537.80 | 1.00 | $1,537.80 |
| | Feb. 18, 2018 - Mar. 3, 2018 | 72.00 | 32.00 | $850.00 | $21.25 | $31.88 | $1,020.16 | 1.00 | $1,020.16 |
| | Feb. 18, 2018 - Mar. 3, 2018 | 84.00 | 44.00 | $994.00 | $24.85 | $37.28 | $1,640.32 | 1.00 | $1,640.32 |
| | Mar. 4, 2018 - Dec. 29, 2018 | 72.00 | 32.00 | $900.00 | $22.50 | $33.75 | $1,080.00 | 21.00 | $22,680.00 |
| | Mar. 4, 2018 - Dec. 29, 2018 | 84.00 | 44.00 | $1,050.00 | $26.25 | $39.38 | $1,732.72 | 22.00 | $38,119.84 |
| 2019 | Dec. 30, 2018 - June 15, 2019 | 72.00 | 32.00 | $900.00 | $22.50 | $33.75 | $1,080.00 | 12.00 | $12,960.00 |
| | Dec. 30, 2018 - June 15, 2019 | 84.00 | 44.00 | $1,050.00 | $26.25 | $39.38 | $1,732.72 | 12.00 | $20,792.64 |
| | Total | | | | | | | | $109,229.93 |

[1] The Hours Worked Per Week and Weekly Rate are alleged in the Complaint and Salazar Declaration. The Overtime Hours Worked Each Week is computed by subtracting 40 from the number of hours worked.
[2] Weekly Rate divided by 40.
[3] Regular Rate times 1.5.
[4] Overtime Rate times Overtime Hours Worked Each Week.
[5] Weekly Overtime Wage times the number of Weeks in Work Period.

Accordingly, the undersigned recommends that Plaintiff be awarded **$109,229.93**[6] for unpaid overtime compensation under the NYLL.

2.    *Damages for spread-of-hours claims*

Employees are entitled to spread-of-hours pay equal to "one additional hour of pay at the basic minimum hourly rate" for each day in which spread of hours exceeds 10 hours. 12 N.Y.C.R.R. § 146-1.6(a). Plaintiff alleged that he worked 12 hours a day six days a week every week from December 4, 2017 through June 16, 2019, and one additional 12-hour day every other week. Because New York's minimum wage increased over that time, the spread-of-hours pay increased over the course of Plaintiff's employment. *See* 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(b).

| Work Period | Total days excluding Sundays | Total Sundays | Total Days Worked[7] | Min. Wage per Hour[8] | Spread of Hours Damages [9] |
|---|---|---|---|---|---|
| Dec. 4, 2017 – Dec. 30, 2017 | 24 | 3 | 24 + (3/2) = 25.5, rounded to 25 | $10.50 | $262.50 |
| Dec. 31, 2018 – Dec. 30, 2018 | 312 | 53 | 312 + (53/2) = 338.5. Plaintiff seeks only 338 days | $12.00 | $4,056.00 |
| Dec. 31, 2018 – June 15, 2019 | 144 | 23 | 144 + (23/2) = 155.5, rounded to 155 | $13.50 | $2,092.50 |
| | | | | Total: | $6,411.00[10] |

---

[6] Reduced from Plaintiff's request of $109,739.08, which was based on a December 3, 2017 start date. (*See* Salazar Decl. at 7.)

[7] Total days excluding Sundays plus half of Sundays.

[8] *See* 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(b)

[9] Total days worked times the minimum wage.

[10] Plaintiff calculates total spread-of-hours damages as $6,435.00, based on a December 3, 2017 start date and one additional Sunday in 2019. (*See* Salazar Decl. at 6.)

Accordingly, the undersigned recommends that Plaintiff be awarded **$6,411.00** in damages under 12 N.Y.C.R.R. § 146-1.6(a).

### 3. *Liquidated damages under the FLSA and NYLL*

Employees may recover liquidated damages equal to the amount of unpaid overtime under both the FLSA and NYLL.  29 U.S.C. § 216(b); NYLL § 663.  A Plaintiff may also obtain liquidated damages for spread-of-hours pay under the NYLL.  NYLL § 663; *see also Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018).  However, a Plaintiff cannot collect liquidated damages for the same injury under both the FLSA and NYLL.  *See id.* at 123.  Considering this, Plaintiff requested that he be awarded liquidated damages under the NYLL for unpaid overtime and spread-of-hours underpayments.  (Dkt. 12-1 at 20.); *cf. Rana*, 887 F.3d at 123 (allowing larger liquidated damages recovery under NYLL).

An employer may avoid liquidated damages if the employer shows both good faith and reasonable grounds for believing that additional payment was not required under the respective laws. *See* NYLL § 198(1-a).  "Under the NYLL, 'liquidated damages are presumed unless defendants can show subjective good faith.'"  *Fermin*, 93 F. Supp. 3d at 47 (*quoting Zubair v. EnTech Eng'g, P.C.,* 900 F.Supp.2d 355, 360 n.3 (S.D.N.Y.2012)).  A defaulting defendant cannot "establish[] good faith to rebut the liquidated damages presumption."  *Fermin*, 93 F.Supp.3d at 47.

For the reasons above, Plaintiff has established that Defendants failed to pay him overtime and spread-of-hours pay.  Plaintiff also alleged that Defendants intentionally failed to pay him the wages he was entitled to, and thus that the damages were knowing and willful.  (Compl. ¶ 41, 43.)  By defaulting, Defendants are unable to present evidence of good faith.

Accordingly, the undersigned recommends Plaintiff be awarded **$115,640.93** in liquidated damages.[11]

### 4. *Damages for wage notice and wage statement claims*

Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-b).  Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198 (1-d).

Because Plaintiff never received wage notice or wage statements from Defendants, and because Plaintiff worked for Defendants for more than 100 days, he is entitled to the maximum damages under both provisions.  *See, e.g., Jianmin Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (ARR) (JO), 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019)  (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days after February 27, 2015).

Accordingly, the undersigned recommends Plaintiff be awarded **$5,000** in damages under Section 195(1) and **$5,000** in damages under Section 195(3).

### 5. *Prejudgment interest*

Plaintiff also seeks prejudgment interest under the NYLL.  (Compl. ¶ 71.)  Prejudgment interest is available for underpayments under the NYLL, which in this case includes both overtime and spread-of-hours claims.  *See* NYLL § 198(1-a); *Ying Ying Dai v. ABNS NY Inc.*, No. 18-cv-5170 (AMD)(RLM), 2020 WL 5820130, at *11 (E.D.N.Y. Sept. 29, 2020).  Prejudgment interest is not available for wage statement or notice violations, or for liquidated damages.  *Id.*  A Plaintiff may,

---

[11] Plaintiff requested $116,174.08 in liquidated damages based on overtime and spread-of-hours calculations that assumed a start date of December 3, 2017.  (Salazar Decl. at 9.)  As stated above, the Court takes the allegation in the Complaint and Declaration that Plaintiff started work on December 4, 2017, which resulted in a slight downward revision to these figures, and accordingly the liquidated damages total as well.

however, seek prejudgment interest on any underpayment and also seek liquidated damages. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents.")  In New York, prejudgment interest accrues at the statutory rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b).  Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994).  "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-cv-05303, 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (citing *Fermin*, 93 F.Supp.3d at 49.)  Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims.  *See, e.g.*, *Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

Plaintiff requests $14,680.90 in prejudgment interest for the time between the midpoint of his employment (September 8, 2018[12]) and the date of the Motion (February 3, 2020).  (Salazar Decl. at 9.)  Plaintiff is entitled to additional interest until the entry of judgment.  Because Plaintiff was denied wages over roughly one and a half years, the undersigned will use the midpoint between the first and last dates of his employment.  The midpoint between December 4, 2017 (Plaintiff's actual start date) and June 16, 2019 is September 9, 2018, and there were 281 days between the midpoint and the end of Plaintiff's employment.  The total amount of unpaid overtime and spread-of-hours pay **($115,640.93)** is multiplied by the 9% interest rate to get interest due of **$10,407.68** per year.  That amount divided by 365 days in a year results in daily interest of $28.51.  The undersigned therefore

---

[12] Plaintiff calculated this midpoint based on a December 3, 2017 start date.

recommends awarding Plaintiff **$28.51** in interest per day from September 9, 2018 to the date of entry of judgment.

### 6. Post-judgment interest

Plaintiff also seeks post-judgment interest, (Compl. ¶ 71) which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, the undersigned recommends that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### 7. 15 percent increase penalty if damages not paid within ninety days

New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). Accordingly, if Defendants fail to satisfy the judgment within the stated deadlines, then the undersigned recommends Plaintiff be entitled to a fifteen percent increase in the amount of damages owed to him.

### 8. Attorneys' fees and costs

Plaintiff requests leave to file a motion for attorneys' fees to the Court upon granting of the Motion. (Dkt. 12-1 at 22.) The undersigned recommends that this request be granted.

## CONCLUSION

Based on the foregoing, the undersigned recommends that a default judgment be entered against Defendants, finding them jointly and severally liable, and that Plaintiff be awarded the

following damages:

    (i)      **$109,229.93** in unpaid overtime wages;

    (ii)     **$6,411.00** in spread-of-hour wages;

    (iii)    **$115,640.93** in liquidated damages;

    (iv)    **$5,000** in statutory damages for the NYLL wage notice claim;

    (v)     **$5,000** in statutory damages for the NYLL wage statement claim;

    (vi)    **$28.51** per day in prejudgment interest from September 9, 2018 until the date of judgment;

    (vii)   Post-judgment interest as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied; and

    (viii)  A 15% increase to any damage award if Defendants fail to pay the judgment within 90 days of the issuance of judgment or 90 days after expiration of the time to appeal, whichever is later, pursuant to NYLL § 198(4).

Additionally, the undersigned recommends that Plaintiff be granted leave to file a motion for attorneys' fees.

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by December 2, 2020.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

                                       **SO ORDERED:**

                                       *Peggy Kuo*

                                       PEGGY KUO
                                       United States Magistrate Judge

Dated:   Brooklyn, New York
         November 25, 2020